UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA

| | | |
|---|---|---|
| TARYLL MILLER, | ) | |
| | ) | |
| Movant, | ) | |
| | ) | |
| vs. | ) | 1:07-cv-1594-RLY-DML |
| | ) | IP 03-CR-180-O1 T/F |
| | ) | |
| UNITED STATES OF AMERICA | ) | |

**Entry Discussing Motion for Relief Pursuant to 28
U.S.C. § 2255 and Denying Certificate of Appealability**

For the reasons explained in this Entry, the motion of Taryll Miller for relief pursuant to 28 U.S.C. § 2255 must be **denied**. In addition, the court finds that a certificate of appealability should not issue.

**The § 2255 Motion**

Taryll Miller was convicted by a jury of one count of possession with the intent to distribute 50 grams or more of cocaine. He was sentenced to 300 months imprisonment. The Seventh Circuit affirmed his conviction and sentence. *United States v. Miller*, 450 F.3d 270 (7th Cir. 2006). The Supreme Court denied his petition for a writ of certiorari. Miller then filed this motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. ' 2255.

**I. Factual Background**

On November 13, 2003, Miller was charged with one count of possession with intent to distribute 50 grams or more of cocaine base. Attorney Jack Crawford took on his defense. In August of 2004, Crawford negotiated a plea agreement pursuant to which Miller would receive a ten year sentence. Miller initially agreed to the plea and signed it, but before Crawford returned the agreement to counsel for the government, Miller changed his mind, directed Crawford not to return the plea agreement, and terminated his relationship with Crawford. Shortly thereafter, attorney Michael Winston was appointed to defend Miller. Before trial, Winston moved to suppress

evidence used against him, but did not challenge the validity of the search warrant used to obtain some of that evidence. Miller's trial proceeded in February of 2005 and he was convicted. At sentencing, Miller was represented by attorney Edward Schrager. He was sentenced to 300 months based in part on testimony he now alleges was inadmissible. Miller obtained another attorney and appealed.

## II. Discussion

In support of this Section 2255 motion, Miller argues that his counsel was ineffective in the following ways: (1) during plea negotiations by providing erroneous advice which led him to reject an otherwise advantageous plea offer; (2) prior to trial by failing to request a *Franks* hearing on the affidavit in support of a search warrant, (3) at sentencing by failing to object to the use of information obtained through a cooperation agreement to enhance his sentence; and (4) on appeal by failing to challenge statement made by the prosecutor during closing argument and certain expert testimony. For each of his claims of ineffectiveness of counsel, Miller must satisfy the elements of the test laid out in *Strickland v. Washington,* 466 U.S. 668 (1984). First, Miller must show that "counsel's representation fell below an objective standard of reasonableness." *See Strickland*, 466 U.S. at 687-88. Next, Miller must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *See id.* at 694.

### A. *Plea Negotiations*

Miller's first claim is that his defense counsel was ineffective during plea negotiations by providing materially erroneous advice which led him to reject an otherwise advantageous plea offer.

As a criminal defendant, Miller had the right to effective assistance of counsel in deciding whether to reject a plea offer. *Almonacid v. United States*, 476 F.3d 518, 521 (7th Cir. 2007). The first prong of the *Strickland* analysis applied to plea negotiations focuses on whether the attorney's advice was that of a reasonably competent defense lawyer. *Julian v. Bartley*, 495 F.3d 487, 498 (7th Cir. 2007). In the context of plea negotiations, a reasonably competent attorney will attempt to learn all of the facts of the case, make an estimate of the likely sentence, and communicate the result of that analysis before allowing the client to plead guilty. *Id.* at 495. The analysis focuses on whether the attorney's actions in learning the facts, analyzing the law, and communicating the results of that analysis to the client, were objectively reasonable. *Id.* A lawyer's performance may be deficient if "he advises his client to reject a plea bargain in the face of overwhelming evidence of guilt and an absence of viable defenses." *Gallo-Vasquez v. United States*, 402 F.3d 793, 798 (7th Cir. 2005).

Here, Miller was offered a plea agreement pursuant to which he would receive a sentence of ten years imprisonment. Miller's counsel at the time, Jack Crawford,

reviewed with him the facts of the case and the applicable sentencing guidelines and recommended that he accept the plea agreement. Crawford also explained that if he went to trial, he would likely be convicted and could expect a sentence of approximately thirty years. Miller signed that plea agreement on August 5, 2004. Before Crawford gave the signed plea agreement to the prosecuting attorney, he received a telephone call from one of Miller=s parents instructing him not to submit the agreement. Crawford met with Miller on August 24, 2004. At that meeting, Miller terminated Crawford=s representation and told him that he had obtained other counsel and did not want to enter into the plea agreement. In October of 2004, Michael Winston was appointed to represent Miller. Winston reviewed the file related to Miller=s case, met with Miller to discuss his case, and asked him about the signed plea agreement. Miller alleges that Winston told him he should not take the plea agreement because he would not receive a sentence longer than ten years even if he went to trial. On the other hand, Winston testified that he never gave such advice. Although there is conflicting evidence regarding the advice Winston gave to Miller regarding the plea agreement, the court finds that the credible testimony shows that both Crawford and Winston advised Miller with regard to the case against him and the applicable sentencing guidelines. Both attorneys learned the facts, analyzed the law, and communicated the results of their analysis to Miller. Accordingly, the court concludes that Miller was provided with the advice that a reasonably competent defense lawyer would have provided.

Because Miller was properly advised, the court finds that his claim does not satisfy the first prong of the *Strickland* test. Miller=s claim that his counsel was ineffective during plea negotiations therefore fails.

### B. *Prior to Trial*

Next, Miller argues that counsel was ineffective prior to trial for failing to request a hearing on the constitutionality of the search warrant. He claims that false statements in the search warrant render the warrant unlawful and that his counsel should have moved for a hearing under *Franks v. Delaware*, 438 U.S. 154, 171 (1978), on this basis to challenge the warrant.

Miller asserts that he would have been entitled to a *Franks* hearing if his trial counsel had requested one because Officer Foster, who prepared and submitted the affidavit for the search warrant, falsely stated that A[c]hecks with the Bureau of Motor Vehicles, prior arrest records and intelligence from the district patrol officers did reveal that Taryll was in fact the person of B/M Taryll Miller . . . who has an address of 6644 Greenshire Dr., in the Avalon Lake apartments.@ Miller asserts that this statement was false because Bureau of Motor Vehicle records show his address to be other than the 6644 Greenshire Drive address.

For Miller to succeed on his argument that counsel should have requested a hearing to challenge the search warrant, he must show that the challenge would have been meritorious. *United States v. Cieslowski*, 410 F.3d 353, 360 (7th Cir. 2005). To be entitled to a *Franks* hearing, the defendant must make a substantial preliminary showing that (1) the affidavit contains a false statement that was intentionally and knowingly made or was made with reckless disregard for the truth and (2) the statement was necessary to find probable cause. *Franks*, 438 U.S. at 171-72.

Miller's argument fails the first prong of the *Franks* test because the officer's statement, taken in context, is not inherently false merely because Miller's address on record with the Bureau of Motor Vehicles was not 6644 Greenshire Dr. In fact, the officer's conclusion that 6644 Greenshire Dr. was Miller's address was based not only on a check with the Bureau of Motor Vehicles, but other information including prior arrest records and intelligence from other police officers.

Even if Miller were able to satisfy the first requirement of a *Franks* hearing, he nonetheless would fail to satisfy the next requirement--that the statement was necessary to establish probable cause. Excluding the statement regarding Miller's address from the affidavit in support of the search warrant, the affidavit would still have contained ample information to support probable cause to search the residence at 6644 Greenshire Dr. Probable cause is demonstrated by "facts sufficient to induce a reasonably prudent person to believe that a search . . . will uncover evidence of a crime." *United States v. Muhammad*, 928 F.2d 1461, 1465 (7th Cir. 1991)(quoting *United States v. McNeese*, 901 F.2d 585, 592 (7th Cir.1990)) (internal quotations omitted). Here, the affidavit was based on several other facts that connected Miller and the sale of cocaine to the residence. First, a confidential informant provided a tip that he or she could purchase cocaine from Miller. Next, the officer and the informant executed a controlled purchase, under police surveillance, from Miller. In the course of that controlled buy, five minutes after a telephone conversation between the informant and Miller, a person identified as Miller left the residence and met the informant. After the meeting, the informant provided the officer a baggy containing crack cocaine. As the trial judge concluded: "The first-hand observations of Defendant Miller coming and going from the 6644 Greenshire Drive residence by Foster and other police officers, and especially the departure from that apartment of the person who then met with the CI five minutes prior to the controlled buy, directly link the source of the crack cocaine obtained by the CI to that location."

Because, even excluding the statement regarding checks with the Bureau of Motor Vehicles, the affidavit in support of the search warrant contained ample information to support probable cause to search the residence at 6644 Greenshire Dr., Miller's claim that his counsel was ineffective for failing to request a *Franks* hearing must fail.

### C. *Sentencing*

Miller also asserts that his counsel was ineffective during the sentencing phase of his trial for not objecting to the testimony of Officer Foster that Miller told him that he possessed a total of three kilograms of cocaine base. Miller asserts that the court should not have considered this testimony because his statements on this issue were made pursuant to a cooperation agreement with Foster.

To succeed on his claim that his counsel was ineffective for failing to object to this testimony, Miller must be able to point to some evidence in the record that an enforceable cooperation agreement existed. *United States v. Hallam*, 723 F.Supp. 66, 72 (N.D.Ind. 1989) (AAt a minimum, something in the record must demonstrate a governmental intent to agree not to use self-incriminating information against a cooperating defendant.@). Miller points to no such evidence, but merely argues that based on the circumstances of Foster=s investigation there must have been such an agreement. In addition, even if Miller could show that he had some kind of cooperation agreement, that agreement likely would not be enforceable in this context because he does not claim an agreement with the appropriate party. *See United States v. Rutledge*, 900 F.2d 1127, 1131-32 (7th Cir. 1990) (AWe are inclined to think, by the way, that [the reference to Athe government@] in the Guidelines should be interpreted narrowly. The provision on agreements is addressed to prosecutors rather than to police, and it would wreak much havoc with prosecutorial prerogatives if casual inducements by police officers were treated as enforceable plea agreements.@).

Miller has not shown that his counsel was ineffective for not objecting to Officer Foster=s testimony because he has not shown that such an objection would have been successful and that failing to object prejudiced his case.

### D. *Appeal*

Miller also alleges that his appellate counsel was ineffective. To evaluate a claim of ineffectiveness of appellate counsel, the court determines whether appellate counsel failed to raise issues that were (1) Asignificant and obvious@ and (2) Aclearly stronger@ than those raised on appeal. *Suggs v. United States*, 513 F.3d 675, 678 (7th Cir. 2008). Miller asserts that his appellate counsel was ineffective for failing to challenge statements made by the prosecutor during closing argument and for failing to challenge expert testimony by Officer Poskon.

#### 1. *Closing Argument*

Miller argues that his appellate counsel should have challenged on appeal what he describes as personal attacks that counsel for the government made on defense counsel. He challenges the following statement made by the prosecutor

during closing argument: "Then perhaps the most irresponsible and reckless thing that an individual can do in society today, this criminal defense lawyer did. You had to go and play the race card where it was not warranted. And to claim to inject it where it has no basis is just not right. The defendant's race, the race of the police, it has no bearing in this case. The only thing that has bearing is the fact that he was dealing dope and got caught." Miller argues that this statement was improper and if his counsel had objected to the statement on appeal, the case would have been remanded for a new trial.

To support a claim of ineffective appellate counsel based on counsel's failure to raise the prosecutor's comments, "it is not enough that the prosecutor's remarks were undesirable or even universally condemned. The relevant question is whether the prosecutors' comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Ruvalcaba v. Chandler*, 416 F.3d 555, 565 (7th Cir. 2005); *see also United States v. Peco*, 784 F.2d 798, 805 (7th Cir. 1986)("A criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone, for the statements . . . must be viewed in context; only by so doing can it be determined whether the prosecutor's conduct affected the fairness of the trial."). In addition, a prosecutor's comments are unlikely to support a reversal when those comments are made in response to comments by defense counsel. *United States v. Reagan*, 694 F.2d 1075, 1079 (7th Cir. 1982)("[W]here the defense counsel makes remarks in closing that invite the government to respond, the prosecutor may, in rebuttal, enter into areas which would otherwise constitute improper argument."). The prosecutor's comments in this case must thus be considered in the context of statements made by Miller's defense attorney. Here, the government explains that the prosecutor made the statement in response to the defense attorney stating, with reference to the search of the apartment: "[a]nd one other factor. You are talking about four or five white men and one white woman going into the home of an African-American young woman with an African-American child. Whether or not we want to believe it, there is [sic] a lot of African-Americans who have been unjustly assassinated by police who have made mistakes. It is in the news all the time."

Because a conviction will not be "lightly overturned" based on the prosecutor's comments and because the challenged comments here were made in response to comments made by defense counsel, the court cannot find that any appellate argument regarding the prosecutor's statements was obvious and clearly stronger than other arguments made on appeal. Miller's appellate counsel was not ineffective for not raising this issue.

2. *Expert Testimony*

Miller finally argues that his appellate counsel was ineffective for failing to challenge expert testimony provided by Officer Poskon. Miller challenges Poskon's qualifications as well as the government's failure to disclose its intention to use

Poskon as an expert.

*Poskon's qualifications.* First, Miller argues that appellate counsel was ineffective for failing to challenge Officer Poskon's qualifications as an expert in the distribution and use of crack cocaine.

Expert testimony is admissible if it is both relevant and reliable. Fed.R.Evid. 702. Expert testimony is reliable only if offered by "a witness qualified as an expert by knowledge, skill, experience, training, or education," and "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." *Id.* An appellate court will review the district court's decision whether to admit expert testimony for an abuse of discretion. *Clark v. Takata Corp.*, 192 F.3d 750, 756 (7th Cir. 1999).

In this case, Poskon testified regarding the activities of those involved in dealing cocaine. "It is well-settled that the methods and structure of narcotics trafficking is a proper source of expert testimony." *United States v. Cruz-Velasco*, 224 F.3d 654 (7th Cir. 2000) (citing cases). To support Poskon's testimony as an expert in the distribution and use of crack cocaine, the government established the following: that Poskon has worked exclusively on drug cases since 1987 and that some of these case involve crack cocaine, that his work brings him in contact with users and sellers of crack cocaine, and that based on his observations and common patterns of drug cases he has worked on, he is familiar with how crack cocaine is used and made. Based on this evidence, the trial judge overruled the defendant's objection to Poskon's qualifications as an expert stating, "He shows background, training, and experience in the area that would allow him to answer questions that would call for him to give opinions on the subject of the manufacture, use, and selling techniques with respect to cocaine."

To show that his appellate counsel was ineffective for failing to raise the issue of Poskon's qualifications, Miller must show that this argument was obvious and clearly stronger than the other arguments raised on appeal. Because Poskon showed that he had experience regarding the trafficking of crack cocaine and because a trial judge's decision to admit expert testimony is reviewed for an abuse of discretion, this court cannot find that a challenge to Poskon's qualifications would have been successful or was stronger than the arguments raised on appeal.

*Failure to Disclose.* Miller also argues that his appellate counsel should have challenged the admission of Poskon's expert testimony because the government did not disclose him as an expert witness prior to trial as required by Rule 16 of the *Federal Rules of Criminal Procedure*.

When the government has failed to comply with Rule 16, the admission of the expert testimony will require a reversal only if the nondisclosure results in substantial prejudice to the defendant. *United States v. Hamilton*, 538 F.3d 162 (2d Cir. 2008); *United States v. Oriedo*, 498 F.3d 593, 604 (7th Cir. 2007). For example, in *Hamilton*, the court held that any error in permitting the testimony that the government failed to disclose as an expert was harmless because "the government firmly established the officer's relevant experience, his qualifications, and the reliability of his evidence." 538 F.3d at 174. As the trial judge concluded in Miller's case, the government established Poskon's experience, qualifications, and the reliability of his evidence. Therefore, any prejudice from failing to disclosure Poskon as an expert prior to trial.

Here, Miller has not shown that his appellate counsel was ineffective for failing to challenge the admission of expert testimony despite the fact that the expert was not disclosed pursuant to Rule 16.

### III. Conclusion

Miller has not shown that his counsel was ineffective at any stage of his criminal trial or appeal. Accordingly, his motion pursuant to 28 U.S.C. ' 2255 is **denied**. Judgment consistent with this Entry shall now issue.

### Certificate of Appealability

Pursuant to Federal Rule of Appellate Procedure 22(b), Rule 11(a) of the Rules Governing § 2255 proceedings, and 28 U.S.C. § 2253(c), the court finds that Miller has failed to show that reasonable jurists would find "it debatable whether the petition states a valid claim of the denial of a constitutional right." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000). The court therefore also **denies** a certificate of appealability.

**IT IS SO ORDERED.**

Date:  03/20/2013

RICHARD L. YOUNG, CHIEF JUDGE
United States District Court
Southern District of Indiana

**Distribution:**

**Gerald A. Coraz**
**gerald.coraz@usdoj.gov**

**Taryll Miller**
**No. 07358-028**
**FMC Lexington**
**Federal Medical Center**
**P.O. Box 14500**
**Lexington, KY 40512**